IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-02438-PAB-BNB

ALVIN MOSCH,
PATRICIA C. MOSCH, and
DAVID K. MOSCH, each individually and d/b/a MOSCH MINING COMPANY,

Plaintiffs,

v.

JOHN HENRY, a/k/a JOHN T. HENRY a/k/a JOHN L. HENRY,
UNITED STATES REAL ESTATE CORPORATION, and any one claiming by or through any of the named persons,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

On August 18, 2011, the plaintiffs initiated an action in the District Court of Clear Creek County, Colorado, by filing a "Petition for Order to Show Cause Why Documents Should Not Be Declared Invalid" (the "Petition"). On September 15, 2011, the action was removed from the state court pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction. *Notice of Removal* [Doc. # 1].

In their Petition, the plaintiffs request an order to show cause and a hearing as provided by section 38-35-204, C.R.S.; attorney fees; and costs. *Petition*, p. 4.

Section 204 provides:

> 1) Any person whose real or personal property is affected by a recorded or filed lien or document that the person believes is a spurious lien or spurious document may petition the district court in the county or city and county in which the lien or document was recorded or filed or the federal district court in Colorado for an order to show cause why the lien or document should not be

>declared invalid. The petition shall set forth a concise statement of the facts upon which the petition is based and shall be supported by an affidavit of the petitioner or the petitioner's attorney. The order to show cause may be granted ex parte and shall:
>
>>(a) Direct any lien claimant and any person who recorded or filed the lien or document to appear as respondent before the court at a time and place certain not less than fourteen days nor more than twenty-one days after service of the order to show cause why the lien or document should not be declared invalid and why such other relief provided for by this section should not be granted;
>>
>>(b) State that, if the respondent fails to appear at the time and place specified, the spurious lien or spurious document will be declared invalid and released; and
>>
>>(c) State that the court shall award costs, including reasonable attorney fees, to the prevailing party.
>
>(2) If, following the hearing on the order to show cause, the court determines that the lien or document is a spurious lien or spurious document, the court shall make findings of fact and enter an order and decree declaring the spurious lien or spurious document and any related notice of lis pendens invalid, releasing the recorded or filed spurious lien or spurious document, and entering a monetary judgment in the amount of the petitioner's costs, including reasonable attorney fees, against any respondent and in favor of the petitioner. A certified copy of such order may be recorded or filed in the office of any state or local official or employee, including the clerk and recorder of any county or city and county and the Colorado secretary of state.
>
>(3) If, following the hearing on the order to show cause, the court determines that the lien or document is not a spurious lien or spurious document, the court shall issue an order so finding and enter a monetary judgment in the amount of any respondent's costs, including reasonable attorney fees, against any petitioner and in favor of the respondent.

The plaintiffs also seek a permanent injunction against the defendants "and anyone

claiming through them from further recordation of inaccurate and forged documents affecting title to Petitioners' properties." *Petition*, p. 4.

On September 7, 2012, I ordered the defendants to appear on September 27, 2012, and to show cause why the alleged spurious documents should not be declared invalid and why such other relief provided for by C.R.S. § 38-35-204 should not be granted [Doc. #105]. Mr. Henry requested permission to appear at the hearing by telephone [Doc. #111]. He cited ill health as the basis for his request to appear by telephone. He did not provide any evidence to support his current claims of ill health, and he has failed to provide evidence supporting previous claims of ill health. See Docs. ##27 and 43. I have twice found that Mr. Henry was engaged in conduct for the improper purpose of delaying this action. Id. Because this matter is brought pursuant to a statute that contemplates an expedited procedure and because it is impractical to attempt to conduct the evidentiary hearing with Mr. Henry, a *pro se* litigant, appearing by phone, I denied his request and ordered him to appear in person. *Minute Order* [Doc. #113]; *Transcript of Show Cause Hearing* (the "Transcript"), 2:19-24.

On September 27, 2012, I conducted a hearing as provided by section 38-35-204, C.R.S. Mr. Henry did not appear at the hearing. Instead, he has filed copious documents with the court [Docs. ##114, 116, 117, 118, 120, 121, 122, 123, 124, 126, 127, 128, 129, 130, 132, 133, 134, 135, 136, 137, 138, 139, and 140]. The documents were not properly offered into evidence at the hearing, and the plaintiffs did not have an opportunity to review or object to them. Therefore, I have not considered the documents in my findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The plaintiffs own interests in approximately 200 mining claims. *Transcript*, 48:21-22. Ownership of the plaintiffs' claims is held one-half by Alvin Mosch, one-third by David Mosch, and one-sixth by Patricia Mosch. Id. at 49:8-12.

2. In 1984, Patricia Mosch created a report (the "Report") concerning 83 patented and unpatented mining claims then owned by the Mosches. The claims are referred to as the Lucania Tunnel Properties. *Transcript*, 10:3-7; 49:13-18; *Plaintiffs' Exhibit A-1*, pp. 10-12. Although the plaintiffs have sold their interests in a number of the properties, they still hold some interest in approximately 39 of the properties. *Transcript*, 49:13-50:4.

3. In 1999, defendant United States Real Estate Corporation obtained title to Alvin Mosch's interest in the following six Lucania Tunnel Properties: (1) International, (2) Knickerbocker Millsite, (3) Thunderbolt, (4) John L. Emerson, (5) Golden Star, and (6) Sunshine Lode. *Plaintiffs' Exhibits 4 and 6*. He also obtained rights to use the Lucania Tunnel. Id.

4. On August 12, 2000, the United States Real Estate Corporation reconveyed to Alvin Mosch its interest in the Sunshine Lode. *Affidavit of Louis A. Weltzer* [Doc. #119], p. 17.[1] Currently, the Mosches own the Sunshine Lode. Id. at p. 26.

5. A spurious document is "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." C.R.S. § 38-35-201(3). Included in the definition of a spurious document is a "wild deed," which is "a recorded deed

---

[1] Mr. Weltzer was issued a subpoena to appear at the hearing, but was unable to attend due to a flight cancellation. *Affidavit* p. 2. I permitted the plaintiffs to submit the affidavit in lieu of his appearance. *Transcript*, 44:24-45:1; 53:7-17. I cite to the page numbers of Mr. Weltzer's affidavit and attached documents as they are assigned by the court's docketing system.

that is not in the chain of title, such as a deed executed by a grantor with no record ownership of the interest." GMAC Mortg. Corp. v. PWI Group, 155 P.3d 556, 557 (Colo. App. 2006) (internal quotations and citations omitted). A groundless document is "one for which a proponent can advance no rational argument based on evidence or the law to support" it. Westar Holdings Partnership v. Reece, 991 P.2d 328, 330 (Colo.App. 1999).

6. On August 10, 2005, defendant John Henry caused three separate documents to be recorded in Clear Creek County. *Transcript*, 38:21-40:25. The first document recorded by Mr. Henry on August 10, 2005, is a Mineral Rights Agreement ("MRA") signed on July 25, 1994, by "Alvin Mosch, Agent for Mosch Mining Company" and "Carolyn Olila-Ramsey, President of SiHoH Recovery, Inc." *Plaintiffs' Exhibit 1.1* (Reception No. 234546). The MRA states that the Mosches "give unto SiHoH Recovery, Inc. the exclusive rights to all Mineral values located on, or within, the mining claims described within **Exhibit A**" subject to certain terms and conditions. Id. at p. 2 (emphasis in original). Attached to the MRA is Patricia Mosch's Report of the 83 patented and unpatented mining claims owned by the Mosches in 1984. Inside the cover page of the Report is a page titled "Exhibit A." Exhibit A lists eight of the Lucania Tunnel properties, including the six properties deeded to Mr. Henry in 1999.

7. The MRA was initially recorded in Clear Creek County on September 22, 1997, as an attachment to an Assignment by SiHoH Recovery, Inc. ("SiHoH") of five or six of the Lucania Tunnel properties to Mr. Henry. *Affidavit of Louis A. Weltzer* [Doc. #119], p. 6. The Assignment and the MRA reference "Exhibit A." Id. at p. 4. There are two versions of Exhibit A attached to the Assignment. The first version includes the following claims: (1) International, (2) Knickerbocker Millsite, (3) Thunderbolt, (4) John L. Emerson, and (5) Golden Star, as well

5

as rights to use the Lucania Tunnel. Id. at p. 9. The second version is the same, but also includes the Sunshine Lode. Id. at p. 14. The record does not indicate which version of Exhibit A is correct, nor does it show what percentage of ownership SiHoH had in these properties, and therefore, what percentage of ownership was transferred to Mr. Henry.

8. Mr. Henry recorded Exhibit 1.1 approximately eight years later. Although Patricia Mosch's Report is not referenced in the body of the MRA, Mr. Henry attached the Report to the MRA in a manner that suggests that all of the Lucania Tunnel properties are part of the MRA. In addition, Exhibit A has been altered to include additional properties. Therefore, Exhibit 1.1 has been altered, is groundless, and is a spurious document.

9. The second document recorded by Mr. Henry on August 10, 2005, contains the affidavits of Alvin Mosch, Patricia Mosch, and David Mosch. *Defendants' Exhibit 1.2*, (Reception No. 234547). The affidavits are dated September 15, 1997, and state that "on July 25, 1994, Mosch Mining Company assigned certain mineral interests to SiHoH Recovery, Inc., a Colorado corporation, pursuant to the attached Mineral Rights Agreement which is marked Exhibit A" and that they "affirm, represent and warrant that Mosch Mining Company considers said Mineral Rights Agreement to be in full force and effect . . . ." Id.

10. Mr. Henry re-recorded the affidavits eight years after they were signed. Although each affidavit refers to an attached MRA, there is no such attachment. Without the attachments the affidavits contained in Exhibit 1.2 are incomplete, invalid, and spurious.

11. The third document recorded by Mr. Henry on August 10, 2005, is a re-recording of the Assignment between SiHoH and Mr. Henry which was initially recorded in Clear Creek

County on September 22, 1997. *Plaintiffs' Exhibit 1.3* (Reception No. 234548).[2] As with the affidavits, the Assignment states that the MRA is attached as an exhibit. However, the only attachment is a statement dated January 26, 1999, by Pam Phipps, Clear Creek County Clerk & Recorder, which states that there are no liens recorded against mineral interests in five named properties. Exhibit 1.3 is incomplete, invalid, and spurious.

12. Mr. Henry subsequently recorded several other documents in Clear Creek County. On September 26, 2005, he recorded a Quit Claim Deed which purports to convey all of the Lucania Tunnel properties from John Henry to the United States Real Estate Corporation. *Plaintiffs' Exhibit 1.4* (Reception No. 235276). Because Mr. Henry only had an interest in five of the properties, Exhibit 1.4 is a "wild deed," *i.e.* a deed that is not in the chain of title. Therefore, Exhibit 1.4 is spurious.

13. On April 9, 2008, Mr. Henry recorded two affidavits and a 158 page attachment. *Plaintiffs' Exhibit 1.5* (Reception No. 248446). The first page is the Affidavit of Carolyn Olila-Ramsey which states that she is the former president of SiHoH and that on July 25, 1994, the MRA was executed in the form attached to her affidavit. She further states that she has put her initials and "today's date" on each page of the MRA "to confirm that it is an accurate copy and to confirm that the Mineral Rights Agreement therein is the same as the Mineral Rights Agreement that was assigned to John Henry." However, there is no MRA attached to Ms. Olila-Ramsey's affidavit. The second page is the Affidavit of Timothy G. Arata which states that he is an investment professional working for Mr. Henry; he has "initialed and marked as Exhibit 1 a

---

[2] The Reception Number from Mr. Henry's recordation is located at the bottom of the pages. The Reception Number at the top of page one is evidence of the initial recording.

Mineral Reserves Report that includes a Mineral Rights Agreement executed by Carolyn Olila-Ramsey and Alvin Mosch on July 25, 1994"; and that the MRA was provided to him by Mr. Henry.  A Mineral Reserves Report is attached to Mr. Arata's affidavit, and each of its 158 pages is initialed and dated by Mr. Arata.

      14.  Because there is no MRA attached to Ms. Olila-Ramsey's affidavit and because Ms. Olila-Ramsey's affidavit makes no mention of Mr. Arata's Affidavit, Exhibit 1.5 is incomplete, invalid, and spurious.

      15.  On November 9, 2010, Mr. Henry recorded another version of the MRA.  *Plaintiffs' Exhibit 1.6* (Reception No. 258531).  This version includes as an attachment a letter from the Clear Creek County Assessor dated March 16, 1999.  It was filed 13 years after the initial MRA, and its Exhibit A has been altered to include additional properties.   Exhibit 1.6 is an altered version of the initial MRA and contains false claims.  Therefore, Exhibit 1.6 is spurious.

      16.  On May 18, 2011, Mr. Henry re-recorded the assessor's letter, but added his own commentary to it.  *Plaintiffs' Exhibit 1.7* (Reception No. 260614).  He also crossed out the name of the County Assessor and replaced it with "Perhaps Alvin Mosch's Mole."  These alterations to the letter are groundless, and the document is spurious.

      17.  The Mosches attempted to sell a number of the Lucania Tunnel properties to a real estate company, but the "deal fell through" because they could not obtain title insurance due to Mr. Henry's spurious recordings.  *Transcript*, 50:7-14.

      18.  "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 126 S.Ct. 1837, 1839 (2006).

19. The plaintiffs have made no showing that remedies available at law are inadequate to compensate them for their injuries.

I respectfully RECOMMEND:

a. The documents recorded by Mr. Henry and bearing Reception Nos. 234546, 234547, 234548, 235276, 248446, 258531, and 260614 (Plaintiffs' Exhibits 1.1 through 1.7) be declared spurious under section 38-35-201(3), C.R.S., be held invalid, and be released pursuant to section 38-35-204(2), C.R.S.;

b. The plaintiffs be awarded their costs and attorney fees; and

c. The plaintiffs' request for a permanent injunction be DENIED.[3]

Dated November 6, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[3]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).